# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CC-01121-COA

| | |
|---|---|
| **LEONARD ALPERT, IZABELLA ALPERT, AND THUY LAND PAWN SHOP, INC.** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **CITY OF BILOXI, MISSISSIPPI** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 07/07/2016 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | WAYNE L. HENGEN |
| ATTORNEYS FOR APPELLEE: | DAVID A. WHEELER |
| | GERALD HENRY BLESSEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED: 10/17/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.

### GRIFFIS, P.J., FOR THE COURT:

¶1. Upon application by Boyd Gaming Corporation, the City of Biloxi adopted the Biloxi Planning Commission's approval of a requested right-of-way vacation and realignment of Fayard Street. Leonard Alpert, Izabella Alpert, and Thuy Land Pawn Shop (collectively "Alpert"), appealed the City's decision to the Harrison County Circuit Court. After a hearing, the circuit court upheld the City's decision. Alpert now appeals to this Court. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Boyd, owner of Imperial Palace Casino and Resort, and Seymour Engineering

submitted an application to the Planning Commission seeking to vacate and realign a portion of Fayard Street. The northern portion of Fayard Street functioned as a public right-of-way. Boyd sought to install and dedicate a new public right-of-way, which would realign Fayard Street with Bayview Avenue, a five-lane thoroughfare.

¶3. On August 6, 2015, the Planning Commission held a public hearing on Boyd's request. During the hearing, Boyd answered questions pertaining to pedestrian safety, utility easements, and the use of the proposed road.[1] The hearing was continued to allow Boyd an opportunity to meet with Coast Transit Authority regarding the location for a new bus stop.

¶4. The hearing recommenced on August 20, 2015. At that time, Boyd informed the Planning Commission that the realignment would result in: (1) a safer area for pedestrians, (2) better turning radius for large vehicles entering Bayview Avenue from Fayard Street, and (3) the pawn shop receiving fifteen feet of additional land. Alpert, the owner of the pawn shop, objected to the vacation and realignment. He asserted that approving the proposal would only benefit Boyd. Alpert claimed there was no justification for the request. Alpert also informed the Planning Commission that the pawn shop had been using Fayard Street for customer parking for the past fifteen years, and the realignment would essentially eliminate customer parking and their business.

¶5. During the public hearing, local residents and business owners voiced their support or opposition to the proposed vacation and realignment. The executive planner addressed

_____

[1] Boyd's representatives, Nancy Depreo, with Seymour Engineering, and Michael Cavanaugh, attorney for the corporation, appeared at the public hearings and meetings and addressed the concerns of the Planning Commission and the City Council.

the Planning Commission and stated that after a thorough review of Boyd's application, the staff had determined that the proposed vacation and realignment better addressed the intersection. The staff had determined that the change would provide more reasonable levels of safety. The Planning Commission supported the application; however, it preferred the addition of some type of traffic control mechanism at the intersection. Despite this preference, the Planning Commission voted, eight to four, to approve Boyd's application as submitted. Alpert timely appealed and requested a public hearing. The request was denied after it was determined that the matter was not appealable at the Planning Commission level.

¶6. On September 15, 2015, during a regularly scheduled meeting, the Biloxi City Council considered a resolution to approve Boyd's application. Boyd gave a presentation depicting the following improvements:

(1)     the sidewalk placement to Bayview Avenue on the realigned Fayard Street, which was not possible under the current layout;

(2)     a straight crosswalk rather than a diagonal crosswalk, which would improve the line of sight for left-hand turns and reduce distance and time issues for left-turning motorists;

(3)     the improved turning radius for large vehicles, turning from Bayview Avenue onto Fayard Street, that make business and residential deliveries along Fayard Street;

(4)     flashing lights and warning signs to alert motorists to the pedestrian crosswalk;

(5)     improvements and beautification of the parking lot south of Bayview Avenue, which included lighting and landscaping; and

(6)     the land owned by Boyd donated to the City for the realignment of Fayard Street, and the dedication to the City of the western vacated portion of Fayard Street as a utility easement.

Following the presentation, the City Council engaged in an in-depth discussion regarding the potential effects that the vacation and realignment would have on Alpert's business. Afterwards, the City Council adopted the Planning Commission's report and findings. The requested right-of-way vacation was approved, and the dedication of the new right-of-way, as presented in Boyd's presentation, was accepted. The City Council's decision was documented as Resolution No. 449-15.

¶7. On September 22, 2015, counsel for Alpert appeared before the City Council and requested reconsideration of the vote. Alpert argued that the changes that the Planning Commission had initially proposed were not set out in the resolution. Alpert later conveyed this concern to the mayor, the City Council, and the city attorney. On September 23, 2015, Alpert appealed the City Council's decision to the Harrison County Circuit Court.

¶8. On September 30, 2015, the City Council held a special meeting to consider a request to amend Resolution No. 449-15. Counsel for Alpert appeared at the meeting and urged the councilmen to rescind the resolution. Alpert claimed that the resolution gave Boyd the vacated western half of Fayard Street, which only left the pawn shop with the eastern half – a fifteen-foot-wide strip of land – to use for parking. Alpert asserted that the space did not meet Biloxi City Code, and that the strip was insufficient for vehicles to enter, park, turn around, and leave. Alpert argued that this essentially eliminated any usable parking for his business. Alpert further asserted that he had utilized Fayard Street for customer parking since 1999. Following a detailed discussion, the City Council tabled the question.

¶9. On June 16, 2016, the circuit court held a hearing on Alpert's appeal. The circuit

4

court entered its findings of fact and conclusions of law, wherein it affirmed the City's decision. The circuit court found that the City's decision was based on substantial evidence, which had been presented at the Planning Commission's public hearings and at the City Council meetings. The circuit judge further found that the vacation and realignment of Fayard Street would improve safety and correct the deficiencies at the intersection of Fayard Street and Bayview Avenue. Based on these findings, the circuit judge determined that the decision was neither arbitrary nor capricious. Aggrieved, Alpert now appeals to this Court.

## STANDARD OF REVIEW

¶10. "This Court employs a limited standard of review when considering the actions of a municipal board." *Hopkins v. City of Mendenhall*, 116 So. 3d 166, 169 (¶11) (Miss. Ct. App. 2013) (citation omitted). "For questions of law, a municipal board's decision is reviewed de novo." *Id.* "Otherwise, we will not set aside the action of the governing body of a municipality unless such action is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis." *Id.*

¶11. "An act is arbitrary and capricious when it is done at pleasure, without reasoned judgment[,] or with disregard for the surrounding facts and circumstances." *Id.* at (¶12). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion or more than a mere scintilla of evidence." *Id.*

## ANALYSIS

> I. *Whether the City's approval of the resolution denies access to the pawn shop and violates Alpert's rights*.

¶12. Alpert contends that his access rights were taken, rather than diverted, and no route

5

of access was substituted. He asserts that the taking is equivalent to eminent domain. Alpert argues that his property will be blocked on all sides – by Boyd's private property on the east and west, utility easements and landscaping on the south and west, and Bayview Avenue on the north. He further asserts that neither the resolution nor any written agreement provides for Boyd's verbal claim that the pawn shop will receive unrestricted access to the casino parking lot. He contends that there is no evidence to support the claim that the vacation is in the public good. Therefore, he claims that the approval of the resolution was beyond the City's power and unsupported by substantial evidence.

¶13. The City disputes Alpert's assertions. The City first contends that no portion of Alpert's property was taken. The City argues that approval of the vacation and realignment pertains to a public road – not Alpert's private property. The City further argues that the construction will not alter the present layout of Alpert's property. Therefore, the City argues that this case is not equivalent to eminent domain. The City notes that Alpert currently only has one parking space on his property, and that the pawn shop customers either park on the street or in the casino parking lot. According to the City, this arrangement will not be affected by the vacation and realignment.

¶14. The City further argues that although Alpert and his customers have used Fayard Street for parking for many years, the usage did not create a right. The City asserts that Alpert, like the general public, has a right to use the street as a road but not as private parking for his business. Therefore, the City contends that the approval neither constitutes a taking nor violates Alpert's rights.

¶15. The present matter is governed by Mississippi Code Annotated section 21-37-7 (Rev. 2015), which provides:

> The governing authorities of municipalities shall have the power to close and vacate any street or alley, or any portion thereof. No street or alley or any portion thereof shall be closed or vacated, however, except upon due compensation being first made to the abutting landowners upon such street or alley for all damages sustained thereby.

As the governing authority of Biloxi, the City Council had the power to vacate any portion of Fayard Street. The record reflects that Fayard Street is a public street. Although Alpert and his customers have utilized the street for parking, there is no evidence in the record to substantiate Alpert's claim that the City's approval violates the access rights to his property.

¶16. During a meeting, the councilmen consulted the city attorney to ensure that the approval would not violate Alpert's property rights. At that time it was determined that Alpert's, as a grandfathered business, had no parking rights on Fayard Street. As a grandfathered business on Bayview Avenue, Alpert was permitted to operate without providing his own separate parking. However, the City's allowance did not convey a right of ownership to Alpert. Thus, Alpert's property has not been taken, as the public street never belonged to Alpert. Moreover, the present layout of Fayard Street, and the proposed realignment under Resolution No. 449-15, will not result in any change to the street. Fayard Street will remain a two-way street with no designated parking spaces. This argument is without merit.

> II. *Whether the vacation and realignment create a more dangerous intersection.*

¶17. Alpert next argues that the City's decision was made without reasoned judgment and

7

with disregard for the surrounding facts and circumstances. He contends that the City's approval of the resolution will make the intersection more dangerous. He asserts that the resolution doubles the number of vehicle intersections and places a pedestrian crosswalk across five lanes of traffic. Thus, Alpert argues that the realignment is not safer, and the City's assertion to the contrary was not based on substantial evidence.

¶18. Alpert further contends that the City based its approval on the fact that Boyd was paying for all of the realignment improvements, which he argues benefits the City. Alpert also argues that the City only approved Boyd's application after it grew "tired of dealing with Boyd." He contends that the decision was arbitrary and capricious.

¶19. The City argues that approval of the vacation was neither arbitrary nor capricious, and it asserts that the decision was supported by substantial evidence. The City maintains that the Planning Commission and the City Council considered opposition, support, and explanations regarding the vacation and realignment. Therefore, the City contends that the Planning Commission and the City Council considered substantial evidence before it rendered a decision.

¶20. The City further argues that the evidence produced at the public hearings and the city council meetings prove that the current layout of the intersection creates hazardous conditions. The City also contends that the record reflects that Alpert's use of Fayard Street for parking creates a safety hazard. Therefore, the City argues that the vacated and realigned street will eliminate the existing dangerous road conditions and create a less dangerous intersection.

¶21. We find that both the Planning Commission and the City Council considered substantial facts surrounding Boyd's application. During the public hearing, the executive planner addressed the councilmen and stated that the Planning Commission's staff had thoroughly reviewed and considered Boyd's application. In a detailed report, the Planning Commission justified its findings and noted that the proposed vacation and realignment "better addressed the intersection and provided reasonable levels of safety." The City Council considered information and testimony provided by both Alpert and Boyd. Therefore, we find that the City's subsequent approval was based upon reasoned judgment.

¶22. Additionally, the councilmen discussed the continued ability of the pawn shop's customers to park along the curb of the realigned Fayard Street, the legality of parking on the street, the additional land that the pawn shop owners would acquire as a result of the vacation, and the elimination of the hazard of drivers backing onto Bayview Avenue. Even more, Boyd informed the City that the pawn shop's customers would not be restricted from using the casino parking lot, which surrounds the pawn shop on three sides.

¶23. The City also considered the statement of one councilman, who asserted that the vacation and realignment placed Alpert in the same position as without the changes. The councilmen also considered the benefits of the improvements, which included that Boyd would pay for the changes. Notably, the City considered several alternatives for reconstructing Fayard Street. Most importantly, the City considered the impact that the improvements would have on the health, safety, and welfare of the citizens.

¶24. We find that the City's decision to approve Boyd's application was reached after

much consideration.  It was afterwards that the City finally concluded:

> [H]aving determined that the standards for [r]ight-of-[w]ay abandonment have been met, specifically finding that the portion of improved public [r]ight-of-[w]ay submitted for vacation is not now or in the foreseeable future of need to the city or its inhabitants, and that the dedication of [a] new [r]ight-of-[w]ay, which will involve the realignment of Fayard Street (as depicted in Exhibit A), will prove beneficial to correcting deficiencies now experienced at this Fayard Street/Bayview Avenue intersection and is acceptable as submitted, subject to the applicant providing easement(s) of sufficient size and location, as determined by the City to accommodate any existing utilities or anticipated future utility or accessibility needs. . . .

We find that the approval was based on "more than a mere scintilla" of evidence and was neither arbitrary nor capricious. *See Hopkins*, 116 So. 3d at 169 (¶11).  This issue is without merit.

¶25.  **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.  TINDELL, J., NOT PARTICIPATING.**